UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY O. WILSON,                          Case No. 19-11672

             Plaintiff,                Laurie J. Michelson
     v.                                United States District Judge

ATLANTICUS SERVICES                          Michael J. Hluchaniuk
CORPORATION,                                 United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**DEFENDANT'S MOTION TO DISMISS (ECF No. 8)**

## I.   PROCEDURAL HISTORY

Defendant Atlanticus Services Corporation (hereafter Atlanticus) removed this case to federal court, from the 67th District Court in Flint, Michigan, on June 6, 2019. (ECF. 1). The state court complaint was attached, as required by 28 U.S.C. § 1446(a), to the removal notice which claimed federal question jurisdiction as the basis of removal. The state court complaint had been filed on May 6, 2019, and had originally named Fortina Credit Card as the defendant. The pleadings do not contain an explanation of the relationship between Atlanticus and Fortina Credit Card so it is assumed that Atlanticus does business under the name Fortina Credit Card. The state court pleadings do not contain a proof of service for the complaint.

Atlanticus filed a motion to extend the time for it to answer or otherwise respond to the complaint (ECF No. 3) and that motion was resolved by a stipulated order granting additional time to Atlanticus. (ECF No. 5). The present motion to dismiss was filed on June 27, 2019. (ECF No. 8). The motion was responded to by plaintiff on June 28, 2019 (ECF No. 9) and Atlanticus filed a reply on July 12, 2019. (ECF No. 11).  On December 23, 2019, this case was referred to the undersigned for all pretrial proceedings.  (ECF No. 23).  The matter is now ready for report and recommendation.

## II.        FACTUAL BACKGROUND

In his complaint, plaintiff alleges that he is an African-American resident of Genesee County and that on an unidentified date he received an "offer" from Fortiva that he had been "pre-approved" for a credit card. (ECF No. 1, PageID.9). He further stated that the "offer" was "prescreened" and had been sent pursuant to a "soft inquiry." *Id*. Plaintiff claimed to have subsequently "applied" for the offer by "accepting" the offer. *Id*. Again no date was alleged for this event. *Id*. He further stated that even though his "status," which he claimed had given rise to the "pre-approved" offer had not changed, he was ultimately denied his application for the credit card. *Id*. Plaintiff states that he received a written denial of his application on an unspecified date and that it is his "belief" that his application was

denied because of his "race African American, Disability, and Income Derivation."
(ECF No. 9, PageID.10).

Plaintiff then contends that it is his "belief" that the denial of his application
for a credit card violates the "Equal Credit Opportunity Act, Elliot Larsen Civil
Rights Act, Fair Credit Reporting Act, Breach of an Agreement and Contract,
Michigan Common Law Fraud and Misrepresentation, [and the] Michigan
Consumer Protection Act." *Id*.

## III.   DISCUSSION

### A.   Motion to Dismiss – Legal Standards

Atlanticus moves to dismiss plaintiff's complaint for inadequate service of
process, under Fed.R.Civ.P. 12(b)(5) and for failure to state a claim upon which
relief can be granted, under Fed.R.Civ.P. 12(b)(6).  A motion filed under Rule
12(b)(6) requires the court to determine if the complaint has stated a claim for
which relief can be granted. In its analysis the court must "construe the complaint
in the light most favorable to the plaintiff, accept its allegations as true, and draw
all reasonable inferences in favor of the plaintiff." *Watson Carpet & Floor
Covering, Inc. v. Mohawk Indus., Inc.,* 648 F.3d 452, 456 (6th Cir. 2011). While
this is a liberal standard, the plaintiff is required to do more than state a bare
assertion of legal conclusions. *Advocacy Org. for Patients & Providers v. Auto
Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A plaintiff must make "a

showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the party pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *Id.* at 556. *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint." *In re Credit Acceptance Corp. Securities Litigation*, 50 F. Supp. 2d 662, 669-70 (E.D. Mich. 1999) (emphasis added). "[A] court may not consider material that exceeds the scope of the complaint" in ruling on a Rule 12(b)(6) motion. *Id.*[1]

*Pro se* litigants are entitled to a more liberal reading than pleadings drafted by a lawyer. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).  That being said, the pleadings must still generally comply with the legal standards for matters pending in federal court. *Davis v. Prison Health Services*, 679 F.3d 433, 437-38

---

[1] However, documents that are attached to the complaint or are referred to in the complaint and are central to plaintiff's claim can be considered in a motion to dismiss along with matters that a court may take judicial notice of. *Id*.

(6th Cir. 2012). However, it is not clear how much of a "liberal reading" plaintiff here is entitled to. Although *pro se* in this litigation, plaintiff is apparently an attorney (not licensed in Michigan) and is a regular litigator in this district. (ECF No. 8, PageID.34).

B.    Equal Credit Opportunity Act

The Equal Credit Opportunity Act (ECOA) is intended to prevent creditors from discriminating against potential debtors based on "race, color, religion, national origin, sex or marital status, or age … [or] because all or part of the applicant's income derives from any public assistance." See 15 U.S.C. § 1691(a)(1)-(2). Plaintiff has made a generalized claim under the ECOA and defendant has moved to dismiss the claim contending that the complaint fails to state a claim under the ECOA pursuant to Fed.R.Civ.P. 12(b)(6). It is generalized, like all of his claims, in the sense that the complaint lists a series of limited facts and then in conclusory fashion identifies the ECOA as a basis for the relief sought. (ECF No. 1, PageID.10).

Defendant argues that in order to state a claim under the ECOA plaintiff would have to allege facts which show that (1) he was a member of a protected class, (2) he applied for credit from a "creditor," (3) he was qualified for the credit he sought, and (4) he was denied the credit card despite his qualifications, citing *Mays v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 877 (6th Cir. 2002).

However, defendant's reliance on *Mays* to establish the showing that must be made to properly state a claim under the ECOA, and thus defend against a motion under Rule 12(b)(6), is misplaced. *Mays* addressed a situation where the defendants had filed what was considered a motion for summary judgment and the court, in applying a burden-shifting framework found applicable to ECOA cases, ruled that the plaintiff could establish a *prima facie* case of credit discrimination by showing the four previously identified factors.

"[T]he standard for stating a claim of discrimination at the pleading stage and the evidentiary standards that must be met to prove that claim [are different]. At the pleading stage, the [plaintiff] is not required to demonstrate discrimination, but merely to allege facts sufficient to make a discrimination claim plausible. As the Supreme Court made clear in [*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)] a plaintiff need not establish a prima facie case of discrimination at the pleading stage as '[t]he prima facie case … is an evidentiary standard, not a pleading requirement.'" *U.S. v. Union Auto Sales, Inc.*, 490 Fed. Appx. 847, 848 (9th Cir. 2012).

Similarly, the court in *Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 979-80 (D.Or. 2016), concluded that a *prima facie* standard for ECOA claims was not the proper measure for the sufficiency of the pleading. "Allegations sufficient to state a claim are not interchangeable with the evidence sufficient to

meet the burden of proof of a *prima facie* case." The *Egbukichi* court went on to comment on this issue by quoting from *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997), which stated that the *prima facie* requirement "orchestrates the burden of proof ... it does not dictate the required elements of a complaint."

The "ECOA prohibits discrimination by 'any creditor ... against any applicant, with respect to any aspect of a credit transaction ... on the basis of race, color, religion, national origin, sex or marital status, or age.' *See* 15 U.S.C. § 1691(a)(1)(2012). ... Under the ECOA, the credit applicant may prove a violation under theories of direct discrimination, disparate impact, or disparate treatment.'" *Canatella v. Reverse Mortgage Solutions Inc.* 2016 WL 6070508, at *4 (N.D. Cal. Oct. 17, 2016).

"[T]o state a claim for violations of ECOA, a plaintiff must allege facts that plausibly suggest: (1) the plaintiff was a member of a protected class; (2) the plaintiff applied for credit from defendants; and (3) the plaintiff was denied credit on the basis of his or her protected class. Facts that might plausibly suggest that the denial of credit was because of or on the basis of an applicant's protected status may include: (1) that the applicant was qualified to receive credit and was denied credit despite being qualified; (2) facts demonstrating discriminatory animus or

treatment by the defendant; or (3) that persons not within the protected class were granted extensions of credit by defendant." *Ugbukichi*, 184 F. Supp. 3d at 980.

Defendant correctly characterizes plaintiff's complaint as "bare bones." In essence, plaintiff alleges that he is an African-American, that he applied for a credit card from defendant, and that his application was denied. The complaint goes on to state that it is plaintiff's "belief" that his application was denied "because of [his] race African American, Disability, and Income Derivation." (ECF No. 1, PageID.10). Of the three alternatives that exist for asserting an ECOA claim, direct discrimination, disparate impact, or disparate treatment, the only one that could possibly apply is direct discrimination because there are absolutely no facts suggesting otherwise. Plaintiff does not allege any facts showing a disability or what his source of income was so those theories lack any factual basis.

Plaintiff has alleged that he is a member of a protected class (African-American) and that he applied for credit and was denied. The problem for plaintiff is establishing a nexus between the denial of his application for credit and his protected status. Plaintiff has not alleged that others not within his protected class were granted credit and he was not. Nor has he alleged that defendant has demonstrated any discriminatory animus or treatment towards him. Plaintiff has alleged he was "pre-approved" for a credit card based on a "'soft inquiry" of his credit report. This allegation does not rise to the level of a showing that he was

"qualified" for the credit card and denied it in spite of his qualifications. Inferences can be drawn from the allegations in the complaint but the inferences that allow for a finding of adequacy of the pleadings must be "reasonable." *Bell Atlantic Corp. v Twombly,* 550 U.S. at 556.  It is not possible to reasonably infer that the receipt of an unsolicited offer to apply for a credit card, even if based on a "soft inquiry" of a credit report, equates to being qualified for that credit card. The "[f]actual allegations must be enough to raise a right to relief above the speculative level" so the claim is plausible on its face. *Id.* These allegations do not rise to that level.

Even with a "liberal" reading of the complaint, the allegations do not amount to more than "the mere possibility of misconduct" and therefore do not show an entitlement to relief under the ECOA. *Iqbal,* 556 U.S. at 679.

C.    Elliot Larsen Civil Rights Act

Plaintiff's complaint includes a generalized claim under the Elliot Larsen Civil Rights Act (ELCRA). (ECF No. 1, PageID.10). Defendant's motion to dismiss requests that this claim be dismissed because the denial of a credit card application "does not amount to an adverse employment action." (ECF No. 8, PageID.37). Defendant's argument seems to be based on the theory that only employment claims can be maintained under the ELCRA.  In his response to the motion plaintiff contends, accurately, that the ELCRA is more than a state law that prohibits discrimination in employment. (ECF No. 9, PageID.57). Plaintiff goes on

to contend that his claim falls within the provision of the ELCRA that prohibits

discrimination in the area of public accommodations. M.C.L. § 37.2302.  In

support of that contention plaintiff cites to a provision of the Americans with

Disabilities Act (ADA), 42 U.S.C. § 12181(7), as to what is a public

accommodation is. (ECF No. 9, PageID.57).  In reply, defendant repeats its

argument that an ELCRA claim must be based on an adverse employment action

but further argues that denying someone an application for a credit card "does not

amount to denying a consumer the enjoyment of a place of public accommodation"

without any further analysis. (ECF No. 11, PageID.74).

The ELCRA prohibits discrimination in circumstances where individuals

attempt to "obtain employment, housing and other real estate, and the full and

equal utilization of public accommodations, public service, and educational

facilities." M.C.L. § 37.2102(1). Clearly the scope of the ELCRA is broader than

employment situations. Under the ELCRA a person shall not "[d]eny an individual

the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of a place of public accommodation or public

service because of religion, race, color, national origin, age, sex, or marital status."

M.C.L. § 37.2302(a). Plaintiff argues, using a definition from the ADA, that

defendant is a place of "public accommodation" in that it provides "goods and

services … to the public" and therefore his claim comes under the ELCRA. (ECF No. 9, PageID.57-59).

The ADA definition of public accommodation is inapposite to the circumstances of this case. The ELCRA is a state law and the ADA is a federal law dealing with different issues. The ELCRA has a definition of public accommodation that is applicable to the protections provided by that body of law. A "'[p]lace of public accommodation' means a business, or an educational, refreshment, entertainment, recreation, health, or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." M.C.L. § 37.2301(a). At least one Michigan court has addressed the meaning of "place of public accommodation" in circumstances where a plaintiff had sued under the ELCRA claiming discrimination in the denial of the opportunity to bid on contracts. The court in *Geiling v Hemlock Semiconductor Corp.* 2012 WL 104746, 2-3 (Mich. Ct. App. Jan. 12, 2012) (quoting *Haynes v. Neshewat*, 477 Mich. 29 (2007)), concluded that there must be a "place" to be a "place of public accommodation" and businesses that don't "routinely serve or market to the public at their physical facilities" are not a "place of public accommodation" under the ELCRA.  Plaintiff has not identified any case, state or federal, that has found that a private business that

extends credit to members of the public through mailings is a "place of public accommodation" and no such case has been located by the undersigned.  While the ELCRA does prohibit discrimination in certain types of financing situations, they are limited to "financing in connection with a real estate transaction or in connection with the construction, rehabilitation, repair, maintenance, or improvement of real property." M.C.L. § 37.2504(1). Had the Michigan legislature intended to extend the protections of the ELCRA to all extensions of credit they probably would not have limited those protections to transactions involving real estate. Plaintiff's complaint fails to state a claim under the ELCRA.

> D.      The Fair Credit Reporting Act

Plaintiff has asserted a generalized claim under the Fair Credit Reporting Act (FCRA). Defendant's motion to dismiss contends that plaintiff has not alleged that defendant "impermissibly used or acquired his credit report" and that plaintiff has not alleged in the complaint the three elements of a FCRA claim which require a showing "(i) that there was a 'consumer report' within the meaning of the statute; (ii) that the defendant used or obtained it; and (iii) that the defendant did so without a permissible statutory purpose." (ECF No. 8, PageID.37) (citing *McFarland v. Bob Saks Toyota*, 466 F. Supp. 2d 855, 867 (E.D. Mich. 2006).

Plaintiff's response to the motion to dismiss is, essentially, an argument that defendant has not proved that his "post-offer credit report no longer meets the

Defendant's pre-screened criteria" and therefore the pre-approval offer is not a "firm offer of credit" such that the defendant's use of plaintiff's credit report is not proper. Plaintiff cites the case of *Sullivan v. Greenwood Credit Union*, 499 F. Supp. 2d 83 (D. Mass. 2007) in support of his position. (ECF No. 9, Page ID.60-61). Defendant's reply simply repeats the argument made in its motion to dismiss. (ECF No. 11, PageID.75).

Plaintiff does not disagree with defendant's position regarding the elements of a proper claim under FCRA as stated in *McFarland*. Of those three elements, the only one the parties focus on is the third – whether the defendant used or obtained plaintiff's credit report with a permissible statutory purpose. Defendant argues, in conclusory fashion, that plaintiff has not alleged facts in the complaint that would show an impermissible purpose and plaintiff responds by stating that because defendant's offer was not a "firm offer of credit" defendant's conduct in obtaining or using the credit report was impermissible. Plaintiff additionally contends that defendant must prove that plaintiff's "post-offer credit report no longer meets the Defendant's pre-screened criteria." (ECF No. 9, PageID.61).

As noted above, a plaintiff must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has

facial plausibility when the party pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *Id.* at 556. *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679.

In this complaint plaintiff alleges that he received a "pre-approved offer" for a credit card, that the offer was "pursuant to a soft inquiry," that he applied for the credit card, that his application was denied in writing, and that his "overall financial picture … had not materially changed" between the time he received the pre-approved offer and the denial of his application. (ECF No. 1, PageID.9-10).

The issue in defendant's motion to dismiss under Rule 12(b)(6) is not who has the burden of proof but whether plaintiff has alleged sufficient facts to show entitlement to relief. In this particular circumstance the question boils down to whether the facts alleged in the complaint show that defendant used a consumer credit report regarding plaintiff for an impermissible purpose.

Although not alleged in the complaint, but something that can be inferred from what was alleged, is that defendant obtained some sort of consumer report from a "consumer reporting agency," without plaintiff's authorization, prior to sending plaintiff an offer for a credit card. "A consumer reporting agency may

furnish a consumer report relating to any consumer … in connection with any credit … transaction that is not initiated by the consumer only if … the transaction consists of a firm offer of credit." 15 U.S.C. § 1681b(c)(1)(B)(i). Plaintiff's response to the motion to dismiss claims that there was no "firm offer of credit" under this section but no facts are alleged in the complaint to support that argument. (ECF No. 9, PageID.60).

"The term 'firm offer of credit . . .' means any offer of credit . . . to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on . . . [t]he consumer being determined, based on information in the consumer's application for the credit . . . to meet specific criteria bearing on credit worthiness . . . as applicable, that are established . . . before selection of the consumer for the offer; and . . . for the purpose of determining whether to extend credit . . . pursuant to the offer." 15 U.S.C. § 1681a(l)(1)(A)-(B). Also relevant to this analysis are the limitations of 15 U.S.C.§ 1681m(d) which relate to the duties of "users" of consumer reports who then make written offers of credit on the basis of information contained in consumer files - which appears to be the case here. "Any person who uses a consumer report on any consumer in connection with any credit . . . transaction that is not initiated by the consumer that is provided to that person

under section 1681b(c)(1)(B) of this title, shall provide with each written solicitation made to the consumer regarding the transaction a clear and conspicuous statement that . . . information contained in the consumer's report was used in connection with the transaction; the consumer received the offer of credit . . . because the consumer satisfied the criteria for credit worthiness . . . under which the consumer was selected for the offer; . . . the credit . . . may not be extended if, after the consumer responds to the offer, the consumer does not meet the criteria used to select the consumer for the offer or any applicable criteria bearing on credit worthiness . . . or does not furnish any required collateral." 15 U.S.C. § 1681m(d)(1)(A)-(C).

Plaintiff has not attached a copy of the "offer" to the complaint nor has he alleged specific terms in that "offer" that would show what conditions might have been included in the "offer." The gravamen of plaintiff's complaint appears to be that he must have qualified for the credit card because the offer was "pre-approved," he was later denied a credit card, and therefore the "offer" was not a "firm" offer. However, without some showing of what the actual terms of the offer were, and whether the denial of his application was based on identified terms (plaintiff alleges that he received a written denial but does not allege what that denial was based on), one can only "speculate" what actually happened in this case. Speculation is insufficient to meet the pleading standards for this claim.

Additionally, civil liability only exists when the user of the credit information does not comply with the requirements of the FCRA willfully, § 1681n(a), knowingly, § 1681n(b), or negligently, § 1681o. Plaintiff has not alleged any one of these three alternative requirements in his complaint.

In *Phinn v. Capital One Auto Finance*, 502 F. Supp. 2d 625 (E.D. Mich. June 11, 2007), the court considered a motion to dismiss in a case brought under the FCRA. The plaintiff in that case had alleged that the offer of credit was not a "firm offer" because it did not include specific terms of credit such as interest rates or term of repayment. In rejecting that claim the court noted a "firm offer" did not need to include such terms and further stated that, "'[A] firm offer of credit under the Act really means a firm offer if you meet certain criteria.'" *Id.* at 628-29 (quoting *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 841 (5th Cir. 2004)).

Plaintiff cites the case of *Sullivan v. Greenwood Credit Union*, 499 F. Supp. 2d 83 (D. Mass. 2007) in support of his response to the motion to dismiss. A fair reading of *Sullivan*, however, does not support plaintiff's case. *Sullivan* has a number of factual similarities to the present case and there the court found that "if the letter [containing the offer of credit] assures the consumer that he is guaranteed to receive credit if he meets certain conditions, and there is no evidence that the letter is a sham … [then] the letter is a firm offer of credit under FCRA." *Id*. at 87.

No claim has been made here that the offer was a "sham" with the real intention of luring customers to purchase other goods or services. The significant principle for the present motion is that plaintiff has not alleged he met all the conditions contained in the offer and without such a showing he cannot be found to have alleged facts that state a claim under the FCRA because he has not shown that the consumer report was used or obtained for impermissible purposes.

The lower court decision in *Sullivan* was affirmed by the First Circuit in *Sullivan v. Greenwood Credit Union*, 520 F.3d 70 (1st Cir. 2008). The First Circuit opinion spent some time talking about the procedure that was probably followed here (these facts have not been alleged and discovery has not been conducted so it is not known for sure) where creditors obtain limited credit information that is used to identify a list of individuals that are sent offers of some sort of credit. The opinion specifically addressed whether the plaintiff had been sent an offer that was a "firm offer" within the meaning of the FCRA.

In finding that the offer in that case was a "firm offer" within the meaning of the FCRA, the court stated that "an offer of credit meets the statutory definition [of a firm offer] so long as the creditor will not deny credit to the consumer if the consumer meets the creditor's pre-selection criteria . . . [however] the statute requires disclosure that the offer can be conditioned on collateral or other pre-determined criteria . . . [and] refers to information the customer will later supply in

an 'application for credit.' Thus, the statute is clear that the fact that the initial letter to the consumer does not yet resolve those additional conditions does not mean the letter fails to be a firm offer of credit." *Id*. at 76.

Admittedly the trail through the weeds of the FCRA is complicated but it is this trail the plaintiff has chosen. In order to properly state a claim under the FCRA plaintiff has to include "[f]actual allegations [that are] enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Twombly*, 550 U.S. at 555. In this case, in order for plaintiff to state a claim that is "plausible on its face" he would have to allege facts to show that he had met all the criteria in the "offer" that was pre-approved as well as any additional conditions that were included in the "offer." That is the only circumstance that would permit the contention that the "offer" was not a "firm offer." The only possible claim that plaintiff has asserted is that defendant violated the FCRA by not making a "firm offer" and an offer is not a "firm offer" if it does not meet the standards described above. Simply alleging that his credit situation has not materially changed, which is the only allegation he has made, between the offer and the denial is insufficient to raise the claim above the speculative state. Plaintiff has failed to state a claim for a violation of the FCRA under the standards for Rule 12(b)(6).

E.     Michigan Consumer Protection Act

Another generalized claim made by plaintiff in his complaint is a violation of the Michigan Consumer Protection Act (MCPA). (ECF No. 1, PageID.10). Defendant moves to dismiss this claim arguing that the MCPA only applies to "consumer purchases for personal, family, or household purposes." (*Id.* at PageID.38 (citing *Nedschroef Detroit Corp. v. Bemas Enterprises LLC*, 106 F. Supp. 3d 874) (E.D. Mich. 2015), *aff'd*, 646 F.App'x 418 (6th Cir. 2016)). Defendant goes on to assert that because plaintiff has not alleged a "purchase" was made "for personal, family, or household purposes" he has failed to state a claim. In his response, plaintiff contends that the MCPA includes "goods, property, or service" in its scope of coverage and therefore credit cards would be included and that a "firm offer for a pre-approved credit card . . . for personal use and the denial thereof, is a fact pattern that clearly states a claim under the" MCPA. (ECF No. 9, PageID.62). Defendant's reply repeats the argument made in the motion and further asserts that there is an "industry practice whereby consumers receive pre-approved offers but subsequently must apply and meet particular criteria in order to receive credit." (ECF No. 11, PageID.75-76).

Defendant's position is somewhat unclear. If defendant is arguing that the MCPA does not apply because plaintiff did not "purchase" an item from defendant that could be considered "goods" or "property" then their argument is not correct. *Nedschroef* does say, quoting from *Slobin v. Henry Ford Health Care*, 469 Mich.

211 (2003), that "the MCPA applies only to purchases by consumers" but, in

context, the court was simply distinguishing consumer transactions from business

or commercial transactions to which the MCPA did not apply. The court clearly

pointed out that the MCPA applied to "the conduct of a business providing goods,

property, or service primarily for personal, family, or household purposes." 106 F.

Supp. 3d at 887 (quoting M.C.L. § 445.902(1)(g)).  Clearly "service," in a general

sense, is covered by the MCPA as long as it is provided primarily for personal,

family, or household purposes.

        However, certain categories of transactions, whether goods or services, are

exempted from coverage under the MCPA. The MCPA exempts "[a] transaction or

conduct specifically authorized under laws administered by a regulatory board or

officer acting under statutory authority of [Michigan] or the United States." M.C.L.

445.904(1)(a).  "The Consumer Credit Protection Act, [15 U.S.C. § 1601, *et. seq.*]

is a comprehensive consumer protection statute that accomplishes its purpose

through a number of subchapters, each of which regulates a different aspect of or

actor in the credit industry. The [Fair Credit Reporting Act] is only one of those

subchapters." *Sullivan v. Greenwood Credit Union*, 520 F.3d 70, 73 (1st Cir.

2008). In *Capital One Bank USA NA v. Ponte*, 2013 WL 6692511 (Mich. Ct. App.

2013), the court considered the application of the exemptions included in M.C.L.

445.904(1)(a) to the circumstances of that case which included a number of credit

card transactions that were the focus of the dispute and challenged under the

MCPA. "The issuance of credit, including disclosures that must be made to

consumers, is regulated by the Consumer Credit Protection Act, 15 U.S.C. § 1601,

*et seq*. . . .  The chapter of the United States Code governing Consumer Credit

Protection is administered by the Bureau of Consumer Financial Protection, 15

U.S.C. § 1602(b), the Board of Governors of the Federal Reserve System, 15

U.S.C. § 1602(c), and the Federal Trade Commission, 15 U.S.C. § 1607(c), among

others. Thus, the general transactions at issue in these cases are specifically

authorized under laws administered by a regulatory board or officer, acting under

statutory authority. Therefore, the Michigan Consumer Protection Act does not

apply to [financial institution transactions] and the trial court properly" dismissed

the claims "in their favor." *Id.* at 4. Under this authority, plaintiff's claim under the

MCPA must be dismissed because the exemption included in the MCPA provides

that it does not apply to transactions covered by FCPA which include those that are

germane to this case.

Even if the claims in plaintiff's complaint were not exempt under the

MCPA, plaintiff would still have to allege one or more of the prohibited practices

listed in M.C.L § 445.904. This he has not done and therefore he has failed to state

a claim under the MCPA that can be granted.

    F.    <u>Fraud and Misrepresentation</u>

Plaintiff's complaint also includes a generalized claim for "Michigan Common Law Fraud and Misrepresentation." (ECF No. 1, PageID.10). Defendant's motion to dismiss asks that this claim be dismissed because plaintiff "does not allege any facts to satisfy the elements of fraud nor has he even identified the alleged fraud ASC engaged in." (ECF No. 8, PageID.38). Plaintiff responded to defendant's argument citing to provisions of the Fair Credit Reporting Act and thereafter contending that "[d]efendant knew that the representation that Plaintiff's post-offer credit report no longer meets the Defendant's pre-screened offer is false, or that it was made without knowledge of its truth as a position assertion." (ECF No. 9, PageID.63-64). In replying to plaintiff's response, defendant argues that plaintiff "has not alleged facts that ASC even made [the representation that Plaintiff's post-offer credit report no longer meets the Defendant's pre-screened offer] or that such representation is false." (ECF No. 11, PageID.76).

As noted, factual allegations not made in the complaint are generally not considered in deciding the sufficiency of the complaint. The complaint in this instance does not mention anything about fraud, false statement, or misrepresentation except for the bare claim of "common law fraud and misrepresentation." Fraud claims have higher pleading standards than other claims. Rule 9(b) provides, in part, that "[i]n alleging fraud … a party must state with

particularity the circumstances constituting fraud …" Stating a fraud claim with sufficient particularity means "a plaintiff must 'describe specific statements, identify the speaker, specify when and where the statements were made, and explain why the statements were fraudulent,' such that the defendant is placed on 'sufficient notice of the [alleged] misrepresentation[s]' to allow the plaintiff's claim of fraud to be 'address[ed] in an informed way.'" *Randall S. Miller & Associates, P.C. v. Pitney Bowes Inc.*, 2016 WL 1242356 (E.D. Mich. 2016) (quoting *Thill v Ocwen Loan Servicing, LLC*, 8 F. Supp. 3d 950, 956 (E.D. Mich. 2014)). Plaintiff's complaint does not include any specific allegation of what statement that could be attributed to defendant contained knowingly false information. Even if the additional information that plaintiff included in his response to the motion to dismiss was considered it does not come close to stating the claim with "particularity" as required by Rule 9(b). Plaintiff's common law fraud claim should be dismissed.

G.     Breach of Contract

Plaintiff's complaint includes a generalized claim of "breach of an agreement and contract." (ECF No. 1, PageID. 10). Defendant's motion to dismiss contends that plaintiff's breach of contract claim does not include facts to support his claim that a contract was breached, considering the elements of such a claim under Michigan law. (ECF No. 8, PageID. 38). Plaintiff's response to the motion

states that "the contract at issue is Defendant's pre-screened firm offer of credit (irrevocable offer) to the Plaintiff" and that his damages were "not having the credit card loan available when needed." (ECF No. 9, PageID. 65). Defendant's reply contends that plaintiff has "no factual or legal support" for the assertion that defendant "breached a 'contract' when it denied Plaintiff's credit card application." (ECF No. 11, PageID.77).

Plaintiff's complaint contains relevant factual allegations that maintain that (1) he received a pre-approved credit card offer, (2) he applied for the credit card pursuant to the offer, (3) his financial picture had not materially changed, and (4) his application for the credit card was denied in writing. (ECF No. 1, PageID.9-10). It is on this set of facts that plaintiff bases his breach of contract claim.

Under Michigan law, "[a] party claiming a breach of contract must establish by a preponderance of the evidence (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Thill v. Ocwen Loan Servicing, LLC*, 8 F. Supp. 3d 950, 954-55 (E.D. Mich. 2014) (quoting *Miller-Davis Co. v. Aherns Const., Inc.*, 296 Mich. App. 56, 71 (2012)).  A party must allege a breach of contract claim with sufficient factual specificity to permit an inference that an agreement was actually reached between the parties. In *Thill* the court found that where no specific terms of the alleged contract were identified—such as what

payments were made, when or how they were to be credited, what mistakes were made, and why they were considered mistakes—the breach of contract claim for a loan modification was "well short of stating [a claim] for breach of contract." *Id*. at 955. A similar result was reached in *Anderson v. Bank of America, N.A.*, 2013 WL 5770507, *4 (E.D. Mich. Oct. 24, 2013). The complaint simply does not contain enough facts to permit a reasonable inference that a contract was created.  The existence of an unsolicited, "pre-approved offer," with no specific wording from the offer that would establish the terms and conditions, does not permit this court to infer that a showing of an enforceable contract has been made in the complaint.

Additionally, in order properly plead the existence of a breach of contract claim there must be a showing of damages. The complaint does not include any allegation of damages. Plaintiff's response to the motion to dismiss states that the damages were "not having the credit card loan available when needed." (ECF No. 9, PageID.65). As noted earlier, the "facts" supporting the claim must be in the complaint and not in other pleadings. Even if these allegations were considered, they would not be a sufficient statement of alleged damages. "Contract damages are limited to those which 'arise naturally from the breach.'" *Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp .2d 775, 780 (W.D. Mich. 2006) (quoting *Kewin v. Massachusetts Mutual Life Ins. Co.*, 409 Mich. 401 (1980)). "Dismissal of a contract claim is warranted where damages are 'dependent upon the chances

of business *or other contingencies.'" Id.* (quoting *McEwen v. McKinnon*, 48 Mich. 106 (1882)).  The possible use that plaintiff might have made of a credit card that he might have obtained from defendant is clearly a "contingency" that does not show any cognizable damages.  Plaintiff has not properly stated a claim for breach of contract.

      H.    <u>Service of Process</u>

Defendant also seeks the dismissal of plaintiff's complaint due to insufficient service of process under Rule 12(b)(5).  Defendant's position is based on the factual claim that service was only affected by plaintiff through facsimile on May 7, 2019, and, according to defendant that is not adequate. (ECF 8, PageID.39).  Plaintiff states, in response, that the state court where the complaint was originally filed sent a copy of the complaint and summons to the address of defendant's registered agent for service of process in Wilmington, Delaware and that plaintiff faxed a copy of the summons and complaint to an agent of defendant located in Wilmington, Delaware on May 7, 2019, and again on May 29, 2019. (ECF No. 9, PageID.66). Plaintiff states this was "ample notice" of the lawsuit. In its reply, defendant maintains its position that service of process was insufficient and notes that plaintiff admitted to using a fax machine to notify defendant of the case. (ECF No. 11, PageID.77-78).

Service of process on a corporation in federal court is governed by Rule

4(h). That rule provides, in essence, that service can be made by complying with

Rule 4(e)(1) or by delivering a copy of the summons and complaint to "an officer,

a managing or general agent, or any other agent authorized by appointment or by

law to receive service of process and – if the agent is one authorized by statute and

the statute so requires – by also mailing a copy of each to the defendant." Rule

4(h)(1)(B). Service of process "by facsimile transmission is not permissible."

*Nichols v. Moore*, 334 F. Supp. 2d 944, 954 (E.D. Mich. 2004). Faxing a copy of

the summons and complaint is not sufficient. Plaintiff asserts that the court where

the complaint was originally filed mailed a copy of the summons and complaint to

an agent of defendant. Nothing in the record supports that claim. When the state

court file was sent to federal court following removal there was nothing in the file

indicating that court personnel had mailed a copy of the summons and complaint to

defendant at any point. Even if that were the case, it would not comply with service

of process requirements.

Rule 4(e)(1) provides that service in federal court can be accomplished by

"following state law for serving a summons in an action brought in courts of

general jurisdiction in the state where the district is located…." Service of process

in Michigan courts is governed by M.C.R. 2.105. Service on a private corporation

may be made by (1) serving a summons and a copy of the complaint on an officer

or the resident agent; [or by] (2) serving a summons and a copy of the complaint on a director, trustee, or person in charge of an office or business establishment of the corporation and sending a summons and a copy of the complaint by registered mail, addressed to the principal office of the corporation. M.C.R. 2.105(D). The test for sufficient service of process is not whether there was "ample notice," rather, the test is whether the applicable rules have been complied with. In this instance they have not been complied with and plaintiff's complaint should be dismissed under Rule 12(b)(5) for insufficient service of process.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the case be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  January 10, 2020                     s/Michael J. Hluchaniuk
                                            Michael J. Hluchaniuk
                                            United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 10, 2020, I electronically field the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participant:  Anthony O. Wilson, G3064 Miller Road, Unit 822, Flint, MI  48507.

                                            s/Durene Worth
                                            Case Manager
                                            (810) 341-7881
                                            durene_worth@mied.uscourts.gov